### In re AUTOMATIC EQUIPMENT MFG. CO.

#### No. B–3–50.

United States District Court
D. Nebraska, Omaha Division.

March 24, 1952.

Mark J. Ryan, South Sioux City, Neb., for claimant, Fred L. Heese.

Raymond M. Crossman, Jr., Omaha, Neb., for trustees.

DONOHOE, Chief Judge.

Fred L. Heese has filed in this corporate reorganization proceeding a claim including the sum of $2,517.60, for commissions. The trustees filed an objection to this claim on the ground that it is barred by the Statute of Limtations. R.R.S.Neb.1943, § 25–206. In view of Section 2, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(2), applicable to corporate reorganizations under Chapter X by virtue of Section 102, 11 U.S.C.A. § 502, this Court has

jurisdiction to consider and allow or disallow the claim objected to by the trustees. The matter was heard in the manner provided in Section 196 of the Bankruptcy Act, 11 U.S.C.A. § 596, and the court, after careful consideration of the material evidence adduced at the hearing, makes the findings of fact and reaches the legal conclusions hereinafter set forth:

Between the dates of March 8, 1944, and September 10, 1944, the claimant, Fred L. Heese, was employed by the bankrupt, Automatic Equipment Company, as a salesman and made sales of wares and merchandise on which he earned commissions totaling $2,517.60. These commissions were due and owing, but unpaid, on September 10, 1944. Since the claimant's cause of action for these commissions had accrued by this date, Cf. 54 C.J.S., Limitations of Actions, §§ 133 and 134, p. 49 et seq., the Nebraska Statute of Limitations commenced to run on the commission account at this time.

At various times between October 29, 1947, and March 31, 1949, the claimant sold on credit certain merchandise to the bankrupt. The dates of the sales and the nature and purchase price of the goods sold from October 29, 1947, to May 15, 1948, are listed below:

| Date | Merchandise | Amount |
|---|---|---|
| 10–29–47 | 5 sacks cement | $ 5.00 |
| 11–13–47 | 5 cases coffee | |
| | 3 cases milk | 108.00 |
| 12–10–47 | 15½ gallons gas | 3.88 |
| 1–27–48 | 10 cases coffee | |
| | 5 cases milk | |
| | 1 xxx sugar | 216.88 |
| 2–26–48 | 20 lbs. sugar | 2.00 |
| 4–13–48 | 60 lbs. sugar | 6.00 |
| 5–5–48 | 10 cases coffee | |
| | 5 cases milk | 223.90 |
| 5–15–48 | 60 lbs. sugar | 6.00 |
| | Total | $571.66 |

■ On May 21, 1948, the bankrupt paid the claimant $333.76. Since the bankrupt did not direct the claimant to apply this payment to any particular account, the claimant had the right to apply the payment to whatever account he desired. Fox v. Carman, 139 Neb. 34, 296 N.W. 343; 40 Am.Jur., Payment, § 117, p. 796; 70 C.J.S., Payment, § 57, p. 262. On June 1, 1948, the claimant transmitted to the bankrupt a statement of the bankrupt's account showing a balance due af $237.90. This statement clearly indicates that the claimant had applied the payment to the merchandise account since $571.66 minus $333.76 equals $237.90. See 40 Am.Jur., Payment, § 127, p. 802 and 70 C.J.S., Payment, § 65, p. 269. A case similar in many respects to the case at bar is People v. Grant, 139 Mich. 26, 102 N.W. 226, 227, in which Judge Montgomery states: "There remains the question as to the effect of entering the credit for payments in a general account and rendering a statement to the debtor showing such application. It seems that the mere entry of a credit to a particular account is not a conclusive application of the payment in the absence of notice to the debtor. Simon v. Ingham, 2 B. & C. 65. But when such credit is made, and an account rendered to the debtor showing such application, it is too late to make a new election."

This sound view seems to represent the general rule and the one which this Court considers applicable in Nebraska. Thus where a creditor appropriates a payment in a particular way, as the claimant did in this case, he is bound by his act and cannot change the application without the consent of the debtor. Sec. 40 Am.Jur., Payment, § 128, p. 803; 70 C.J.S., Payment, § 67, p. 271. The payment, having been applied to the merchandise account, did not by reason of Section 25–216, R.R.S.Neb. 1943, suspend the running of the statute of limitations on the commission account. See 54 C.J.S., Limitations of Actions, § 322, p. 425 et seq.; 34 Am.Jur., Limitations of Actions, § 288, p. 265 et seq.

■ On July 7, 1948, the bankrupt purchased on credit from the claimant twenty pounds of sugar for $2; and on July 16, 1948, the bankrupt paid the claimant $2. The necessary implication of this payment under these circumstances would seem to be

that the debtor intended to have the payment applied to the merchandise account, and the creditor was aware of this. It has been held that a direction of application of payment by the debtor may be implied from circumstances showing the debtor's intention, where knowledge of these circumstances is traced to the creditor. Cf. F. M. Slagle & Co. v. Bushnell, 70 S.D. 250, 16 N.W.2d 914, 156 A.L.R. 1070; Taylos v. T. & S. Sandiford, 7 Wheat. 13, 20 U.S. 13, 5 L.Ed. 384. However, it is not necessary to consider whether in Nebraska a creditor would be bound to make the application in accordance with this implied direction because the evidence shows that the creditor did so apply the payment and as has been pointed out before the creditor is bound by his own election and application. In this connection the following facts are important: The bankrupt purchased 6 ten-pound bags of sugar for $5.40 on July 21, 1948, and 2 cases of Carnation milk for $16 on July 28, 1948. The claimant extended credit for both purchases. On August 3, 1948, the claimant transmitted to the bankrupt a statement of his account. It appears from the statement that the bankrupt was charged for only one case of Carnation milk, instead of two, ordered July 28. The statement convincingly establishes that the $2 payment of July 17, 1948, was credited by the claimant to the merchandise account, since $237.90 (the June 1st balance) plus $5.40 (the July 21st purchase) plus $8 (cost of one case of Carnation milk purchased July 28th) equals $251.30, the balance shown on the statement. The $2 payment, having been applied to the merchandise account, did not suspend the running of the statute of limitations on the commission account.

No purchases were made during the month of August and on September 1, 1948, the claimant sent the bankrupt another statement for $251.30. On September 10, 1948, the four year statute of limitations, R.R.S.Neb.1943, Sec. 25–206, had run its course and the claimant's right of action on the commission account became barred.

From October 23, 1948, to November 11, 1948, the following purchases were made by the bankrupt from the claimant on credit:

| Date | Merchandise | Amount |
|---|---|---|
| 10–23–48 | 3 cases Carnation milk | $10.50 |
| 11–15–48 | 45 lbs. sugar | 4.05 |
| 11–24–48 | 41½ lbs. geese | 12.45 |
| | Total | $27.00 |

On December 1, 1948, the claimant sent the bankrupt a statement showing a balance of $286.30 due on the bankrupt's merchandise account. This sum included: $251.30, the September 1, balance; $8, the case of Carnation milk not previously charged to the bankrupt; and $27, the October and November purchases. Up to this point all of the statements forwarded to the bankrupt point unequivocally to the fact that the claimant had applied the $335.76 received from the bankrupt to the merchandise account. However, on April 1, 1949, the claimant transmitted the following statement to the Bankrupt:

"Statement
Pender, Nebraska, April 1, 1949
Automatic
City
In Account With
Heese Produce
Cream, Poultry, Eggs and Feeds

| 1949 | | | Dr | Cr |
|---|---|---|---|---|
| 1 | 25 | 100# Sugar | 8 70 | |
| | | Stake Box | 150 00 | |
| 3 | 31 | 1 Cs Milk | 3.65 | |
| | | | 3302 01 | 335 76 |
| | | 607 – 162.35" | | |

The figure 3302.01 in the debit column of this statement is evidently the total of all commissions owed by the bankrupt to Heese and the purchase price of all the goods and merchandise purchased by the bankrupt from Heese. The figure 335.76 in the credit column of the statement is the total of the payments made by the bankrupt to the claimant. These conclusions are born out by the statement transmitted to the bankrupt May 1, 1949. The April 1, 1949, statement is the first indication given by the claimant that he intended to apply the bankrupt's payments of $335.76 against the commission account. Since the April 1, 1949, statement could

**430**

not alter the claimant's prior election and application of the payment without the consent of the bankrupt, see 40 Am.Jur., Payment, § 128, p. 803; 70 C.J.S., Payment, § 67, p. 271, and since the bankrupt did not so consent, the statement did not revitalize the barred claim. It necessarily follows that the Mr. Heese's claim of $2,324.67 for commissions must be disallowed.

### Counterclaim

The bankrupt's counterclaim for reasonable rental value of the 1½ ton truck which it allowed the claimant to use from January 1, 1947, to March 1, 1949, must be denied. The testimony relating to the actual time during which the truck was used is too vague and indefinite to serve as a basis for the claim. In addition to this, the testimony of Mr. Heese to the effect that he allowed Automatic Equipment Company the use of his trucks as much, or even more, than he used the trucks of Automatic Equipment Company, leads the Court to the conclusion that ample consideration has already been given for the use of the bankrupt's truck.